# SUPREME COURT OF ARKANSAS

No. CV–14–367

| | |
|---|---|
| JOHN K. KELLY<br><br>APPELLANT<br><br>V.<br><br>MARK MARTIN, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF ARKANSAS; ROB HILL, LOU ANN CARTER, AND JEFF OLMSTED, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE PERRY COUNTY ELECTION COMMISSION; LEONARD A. BOYLE, SR., CHRIS BURKS, AND ALEX REED, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE PULASKI COUNTY ELECTION COMMISSION; AND TIMOTHY D. FOX<br><br>APPELLEES<br><br><br>TIMOTHY DAVIS FOX<br>     THIRD-PARTY APPELLANT<br><br>V.<br><br>LESLIE STEEN, IN HIS OFFICIAL CAPACITY AS CLERK OF THE SUPREME COURT OF ARKANSAS AND ARKANSAS COURT OF APPEALS<br>     THIRD-PARTY APPELLEE | Opinion Delivered May 14, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CV–2014–1297]<br><br>HONORABLE SAM BIRD, SPECIAL JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

John K. Kelly appeals from the Pulaski County Circuit Court's order finding that Judge Timothy D. Fox was eligible "to be a candidate for the position of Circuit Judge, Judicial District 06, Division 6, Sub-district 6.2, in the election for said judgeship scheduled to be conducted on May 20, 2014." Specifically, Kelly asserts that Judge Fox was delinquent in the payment of his 2013 annual license fee from March 2 until April 16, 2013. Kelly concludes that because he was delinquent for that period of time, he was not a "licensed attorney" for the six years immediately preceding the date of assuming office, as mandated by amendment 80 to the Arkansas Constitution. Kelly concludes that Judge Fox thus is ineligible to be a candidate. This case was expedited, and the parties were ordered to file simultaneous briefs. The State filed an amicus curiae brief. We may hear this case because it is an appeal pertaining to elections and election procedure. Ark. Sup. Ct. R. 1-2(a)(4) (2014). We affirm.[1]

Election proceedings are governed by statute. *Zolliecoffer v. Post*, 371 Ark. 263, 264, 265 S.W.3d 114, 116 (2007). The two types of election proceedings provided for by statute are pre-election-eligibility challenges and post-election, election contests. *Id.*, 265 S.W.3d at 116. A party challenging a candidate's eligibility to stand for election must bring a pre-election challenge by way of a petition for writ of mandamus and declaratory judgment. *Id.* at 265, 265

---

[1] Judge Fox filed a notice of appeal from the dismissal of his third-party complaint against Leslie Steen in his official capacity as clerk of this court in which Fox asserted that an automatic suspension based on nonpayment of the annual license fee violated due-process provisions of the United States Constitution and the Arkansas Constitution. Fox, however, does not raise on appeal any issue relating to the circuit court's dismissal.

S.W.3d at 116. Our statute on pre-election-eligibility challenges provides in part that "[n]o person's name shall be placed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of filing, or as otherwise may be provided by law, as a candidate for the office to hold the public office for which he or she is a candidate." Ark. Code Ann. § 7-5-207(b) (Supp. 2013).

Kelly petitioned the circuit court for issuance of a writ of mandamus and for declaratory judgment. Observing that section 16(B) of amendment 80 to the Arkansas Constitution requires that circuit judges "shall have been licensed attorneys of this state for at least six years immediately preceding the date of assuming office," Kelly asserted that Judge Fox is a candidate for the position of Pulaski County circuit judge, and that the elected candidate for this position would assume office on or about January 1, 2015. Kelly argued that to satisfy section 16(B) of amendment 80, a candidate for the position of circuit judge must have been a licensed attorney in this state since at least January 1, 2009. Kelly alleged that Judge Fox failed to pay his annual license fee, which was due March 1, 2013. Kelly further alleged that Judge Fox's "license as an attorney in the state of Arkansas was suspended for the period of time between March 2, 2013, and April 16, 2013." Kelly argued that "[d]uring the period of time" that Judge Fox "was suspended, he was not a 'licensed attorney,'" and thus he was not a licensed attorney for the constitutionally mandated six-year period immediately preceding the date of assuming office. Kelly concluded that because Judge Fox is not a qualified or eligible candidate for the position of circuit judge, his name could not be included on the ballot for this office. Kelly asked the circuit court to issue a declaratory judgment

3

finding that Judge Fox was unqualified and ineligible for the position and to issue writs of mandamus ordering the Arkansas Secretary of State and the Commissioners of the Pulaski County Election Commission and the Perry County Election Commission not to include Judge Fox on any ballot as a candidate for circuit judge.

At the hearing on the matter, the evidence established that Judge Fox, who was admitted to the bar in 1981, is currently serving his last year of a six-year term as a circuit judge. Further, to continue to maintain his judicial position, Judge Fox must stand for election in the May 2014 primary. If elected, his term of office will begin in January 2015. The evidence also established that Judge Fox's annual license fee was due March 1, 2013, and that he paid the $200 fee along with a $100 late fee on April 16, 2013.

In its oral ruling, the circuit court found that the evidence established that Judge Fox had been delinquent on his annual license fee. The court found that though Judge Fox had been suspended, this did not constitute a revocation or termination of his license. In its written order, the circuit court found that Fox was an eligible candidate. Kelly appeals from that decision.

Amendment 80, section 16(B) of the Arkansas Constitution, which was adopted by the voters of this state at the November 2000 general election, and which became effective July 1, 2001, provides that circuit judges "shall have been licensed attorneys of this state for at least six years immediately preceding the date of assuming office." The question presented to this court is the interpretation of the word "licensed" in amendment 80. When interpreting the Arkansas Constitution, we read it as written, and language that is plain and unambiguous is

to be given its obvious and common meaning. *City of Fayetteville v. Washington Cnty.*, 369 Ark. 455, 468, 255 S.W.3d 844, 853–54 (2007).

Amendment 28 to the Arkansas Constitution provides that the "Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." The language of amendment 28 "is mandatory, affirmatively imposing upon this Court the duty of making and enforcing rules governing the practice of law and the conduct of lawyers." *In re Sup. Ct. License Fees*, 251 Ark. 800, 801, 483 S.W.2d 174, 175 (1972). The Arkansas Constitution must be considered as a whole, and to understand the meaning of any part of it, we must read it in the light of other provisions relating to the same subject matter. *Wells v. Riviere*, 269 Ark. 156, 165, 599 S.W.2d 375, 379 (1980). Thus, we may determine what it means to be "licensed" under section 16(B) of amendment 80 by considering amendment 28 and the constitutionally mandated rules this court adopted to regulate the practice of law and the professional conduct of attorneys at law.

When this court construes the meaning and effect of a court rule, we use the rules of statutory construction and construe the rule just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Richard v. Union Pac. R.R. Co.*, 2012 Ark. 129, at 4–5, 388 S.W.3d 422, 425. The rules relevant to our discussion of the meaning of the word "licensed" have essentially remained unchanged since the passage of amendment 80. Rule VII of the Rules Governing Admission to the Bar provides that an "annual license fee . . . shall be imposed upon each attorney actively licensed to practice law in this State." Ark. Bar Adm. R. VII(A) (2013). Further, the rule provides that "[f]ailure to pay the annual

license fee provided in subsection A of this Section shall automatically suspend the delinquent lawyer from the practice of law in Arkansas." Ark. Bar Adm. R. VII(C). That rule also provides that "[w]here the delinquency is for three years or less, reinstatement may be had by the payment of all such delinquent dues, and a penalty." Ark. Bar Adm. R. VII(C)(2). Further, the rule provides that "[i]t shall be the duty of the Clerk to maintain a public record of licensed attorneys in the state of Arkansas and a list of all attorneys no longer licensed and the reason therefore, e.g., deceased, suspended, disbarred, surrender of license, inactive, delinquency of fee, disabled or retired." Ark. Bar Adm. R. VII(E).

The term "suspension" as it relates to the automatic suspension of a delinquent lawyer from the practice of law in Arkansas for failure to pay the annual license fee was not defined in Rule VII. The plain language of the rule itself indicates that the "suspension" is from the "practice of law." This court has issued a separate set of rules, the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law. Therein are defined the types of sanctions available to address misconduct, including definitions of "disbarment" and "suspension." "Disbarment" is defined as the "termination of the lawyer's privilege to practice law and removal of the lawyer's name from the list of licensed attorneys." Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(D)(1) (2013). Further, "suspension" is defined as a "limitation for a fixed period of time on the lawyer's privilege to engage in the practice of law." Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(D)(2). One rule of statutory construction is that all acts passed upon the same subject are *in pari materia*, and must be taken and construed together. *Salley v. Cent. Ark. Transit Auth.*, 326 Ark. 804, 806, 934 S.W.2d

510, 511 (1996). Thus, we may apply the definition of "suspension" found in section 17 to Rule VII, as these are both rules of this court "regulating the practice of law and the professional conduct of attorneys at law" as provided in amendment 28.

According to these definitions, a "disbarment" terminates the lawyer's privilege to practice law and results in the removal of the lawyer's name from the list of licensed attorneys, while a "suspension" constitutes a lesser sanction that only limits the lawyer's privilege to engage in the practice of law. Rule VII provides that "[f]ailure to pay the annual license fee . . . shall automatically suspend the delinquent lawyer from the practice of law in Arkansas." A "suspension" for failure to pay the annual license fee limits the lawyer's privilege to engage in the practice of law. Contrasting the definitions of "suspension" and "disbarment," a lawyer under suspension remains licensed, because that license has not been terminated and has not resulted in the removal of the lawyer's name from the list of licensed attorneys; it is only the lawyer's privilege to engage in the practice of law that is limited.[2] Thus, under amendment 80, a lawyer who is suspended for failure to pay the annual license fee continues to be a "licensed" attorney.

Furthermore, this distinction between a licensed attorney and the practice of law may be found in amendment 80 itself. As noted above, under section 16(B) of the Arkansas

---

[2]The dissent remarks that "the majority improperly goes beyond the plain language of amendment 80, section 16 to reach this result" and then promptly uses a layman's dictionary to define the word "suspend," a word that does not appear in that constitutional provision. Further, the dissent's reliance on a dictionary over our own definition of the word misses the meaning that this court has attributed to the word. Nevertheless, the dissent ultimately adopts our definition.

Constitution, circuit judges "shall have been licensed attorneys of this state for at least six years immediately preceding the date of assuming office." Section 14 provides in part that "Justices and Judges, except District Judges, shall not practice law during their respective terms of office." Thus, while amendment 80 requires circuit judges to be licensed, that requirement is distinguished from the practice of law.[3]

Kelly notes that, under Rule VII(C)(2), "reinstatement may be had by the payment of all such delinquent dues, and a penalty." He urges that the word "reinstatement" compels the conclusion that an attorney's license is being reinstated; therefore, the license was lost. We disagree, as a fair reading of Rule VII indicates that the "reinstatement" is in the form of reinstating the delinquent attorney's privilege to practice law. In fact, the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law make a distinction between "reinstatement" that follows "any period of suspension from the practice of law," and "readmission" that follows "disbarment." Ark. Sup. Ct. P. Regulating Prof'l Conduct §§ 23, 24. Kelly asserts that the only privilege an attorney receives by being licensed is the ability to practice law, and if that ability is suspended, the attorney does not have a license. However, as these rules show, an attorney who has been suspended from the practice of law may be reinstated, while an attorney who has been disbarred cannot. This distinction

---

[3]The dissent remarks that if an attorney's right to practice law is taken away, "that 'license' is not worth the paper it is printed on." The fallacy of this position can best be demonstrated by the observation that a judge is specifically prohibited from practicing law by amendment 80, section 14. Thus, by the dissent's logic, upon assuming judicial office, a judge would become unlicensed and ineligible to run for reelection.

shows that even if the attorney has been suspended from the practice of law, the license retains a privilege.

We are not unmindful that Rule VII(E) instructs the clerk to maintain a "list of all attorneys no longer licensed and the reason therefore, e.g., deceased, suspended, disbarred, surrender of license, inactive, delinquency of fee, disabled or retired." It may be suggested that this provision demonstrates that a "suspended" attorney is "no longer licensed." This interpretation, however, demands too much from this subsection. Rather, the point of maintaining the public record is to provide for the public a list of attorneys, whether they be deceased, suspended, disbarred, license surrendered, inactive, delinquent payment of fee, disabled, or retired, who no longer practice law and the reason therefore. We observe that upon the transfer to inactive status, the attorney is not "entitled to practice in Arkansas." Ark. Sup. Ct. P. Regulating Prof'l Conduct § 25(F). The attorney may be reinstated "to active status upon a showing that any disability has been removed and the attorney is fit to resume the practice of law." Ark. Sup. Ct. P. Regulating Prof'l Conduct § 25(G). Thus, for an inactive attorney, like an attorney suspended from the practice of law for delinquency, a limit is imposed on the attorney's entitlement to practice law; however, the privilege to practice law is not terminated and the lawyer's name is not removed from the list of licensed attorneys. In any event, if there is a conflict, the specific provision in Rule VII(C) that "[f]ailure to pay the annual license fee provided in subsection A of this Section shall automatically suspend the delinquent lawyer from the practice of law in Arkansas" controls over the general statute that merely sets out the clerk's recordkeeping duties; under the rules of statutory construction, we

9

give effect to the specific rule over the general rule. *See, e.g.*, *Walden v. State*, 2014 Ark. 193, at 10, ___ S.W.3d ___, ___.

Kelly also argues that the doctrine of res judicata precluded the circuit court from ruling against him. He asserts that a different circuit court, in a case involving another candidate for that same judicial seat, considered the same legal issues raised here. He contends that the other court's ruling supported the position that Kelly takes here, and that Judge Fox and the other candidate are in some fashion in "privity" with one another. We conclude that res judicata does not apply. The true reason for holding that an issue is barred by res judicata is not necessarily the identity or privity of the parties, but is instead to put an end to litigation by preventing a party who has had one fair trial on a matter from relitigating the matter a second time. *Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, at 9, 381 S.W.3d 793, 799. Judge Fox's eligibility as a candidate was not litigated in the other case.

Accordingly, we conclude that, under amendment 80, even though Judge Fox failed to pay his annual license fee for forty-five days in 2013, he nevertheless remained a licensed attorney during the period of delinquency because his license was not terminated and his name was not removed from the list of licensed attorneys. Because he was a licensed attorney during that period and had been admitted to the bar in 1981, he was, as required by amendment 80, a "licensed attorney[ ] of this state for at least six years immediately preceding the date of" the date on which the elected circuit judge will assume office. Thus, we affirm the circuit court's decision that Judge Fox was eligible "to be a candidate for the position of Circuit Judge, Judicial District 06, Division 6, Sub-district 6.2, in the election for said

judgeship scheduled to be conducted on May 20, 2014."[4]

Affirmed.

SPECIAL JUSTICES RAYMOND R. ABRAMSON, WOODY BASSETT, and TODD TURNER, join in this opinion.

CORBIN, J., dissents.

DANIELSON, BAKER, and GOODSON, JJ., not participating.

**DONALD L. CORBIN, Justice, dissenting.** Recently, this court was publicly accused of being results oriented. Never has that been more evident than with today's decisions.

The arguments raised to us, in both length and intricacy, are a fine demonstration of what lawyers are best at doing—lawyering. But hair-splitting legal arguments and analysis are not necessary to resolve the issue here presented. Only plain language and ordinary meaning are necessary. If the language of a constitutional provision is plain and unambiguous, each word must be given its obvious and common meaning. *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001). "Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision." *Id*. at 99, 40 S.W.3d at 217 (quoting *Daniel v. Jones*, 332 Ark. 489, 499, 966 S.W.2d 226, 231 (1998)).

Amendment 80 requires that a candidate for judicial office meet certain qualifications

---

[4]The dissent remarks, "Recently, this court was publicly accused of being results oriented. Never has that been more evident than with today's decision." Although every opinion that this court promulgates achieves a "result," it is disappointing that a justice of this court would resort to this rhetoric.

to be eligible to assume the bench. For purposes of the instant appeal, which involves an election for a circuit judgeship, the plain language of amendment 80 requires that a circuit judge must be a licensed attorney for six years immediately preceding the date he or she takes office. The purpose of such a qualification is to ensure that those elected to serve as judges are experienced and learned in the law. Those requirements have now been needlessly tossed aside.

The majority opines that the plain language of the word "suspend," as used in Rule VII(C), means that an attorney who has been suspended from the practice of law remains a licensed attorney, particularly when the word "suspend" is considered in light of the definitions found in the Procedures Regulating Professional Conduct.[1] It is obvious that the majority improperly goes beyond the plain language of amendment 80, section 16 to reach this result. *Webster's Third New International Dictionary* defines "suspend" as "to debar or cause to withdraw temporarily from any privilege, office, or function; to cause to cease for a time; stop temporarily." *Webster's Third New International Dictionary* 2303 (2002). Clearly, when an attorney is suspended, his or her privilege to practice law temporarily ceases. In that regard I agree with the majority. But, the problem is that the majority totally fails to consider what it means to be suspended from the practice of law. I think the Honorable John Cole stated it best in *Bailey v. Martin*, 2014 Ark. ____, ____ S.W.3d ____, decided this same day, when

---

[1]The Procedures specifically provide that they are applicable only in cases where an action has been instituted against an attorney and is within the purview of this court's Committee on Professional Conduct and thus are wholly inapplicable to the instant case.

he reasoned that "you don't have a license if you don't have the right to practice law."[2]  *See, e.g., In re Lewis*, 308 Ark. 610, 826 S.W.2d 264 (1992) (per curiam) (stating that failure to timely pay the annual license fee automatically suspends the delinquent member from the Bar); *Widmer v. Widmer*, 288 Ark. 381, 705 S.W.2d 878 (1986) (holding that an attorney who failed to pay his license fee performed services for his client "while his license was suspended" and thus was precluded from collecting his attorney's fee).  The majority fails to recognize that an attorney's license grants that person the right to practice law, nothing more.  If that right is taken away, even for a short period of time, that "license" is not worth the paper it is printed on.  It is as simple as that.  Unfortunately, simplicity and plain language do not allow for the majority's desired result in this case.

Because the majority has tortured the meaning of "suspend" in such an absurd way, a lawyer who is suspended, either administratively or for misconduct, may now qualify as a judicial candidate.  It is even more ludicrous to conclude that an attorney may qualify as a judicial candidate, even though he or she is precluded from engaging in the practice of law; yet, that is the precise result of the majority's holding.  This court has long held that it will not engage in statutory interpretations that defy common sense and produce absurd results. *E.g.*, *Dep't of Career Educ., Div. of Rehab. Servs. v. Means*, 2013 Ark. 173, ___ S.W.3d ___.

---

[2]It is not lost on me that the judicial candidate in the instant case benefits the most from today's ruling, as he has now earned the right to run uncontested despite the fact that his license was suspended, just as his opponent's was; however, his opponent does not get to benefit from the absurdity of today's rulings because she was removed from the ballot and failed to pursue more immediate relief from this court.

Apparently, that is no longer the case.

For these reasons, I dissent.

*Samuel A. Perroni, Esq.*; and *Matt Campbell, Esq.*, for appellant.

*Martha Adcock*, General Counsel, and *L. Justin Tate*, Associate General Counsel, for appellee Secretary of State Mark Martin.

*Amanda Mankin-Mitchell* and *Karla M. Burnett*, Pulaski County Attorney's Office; and *Larry Jegley*, Prosecuting Attorney, Sixth Judicial District, for appellees Pulaski County Election Commission and Perry County Election Commission.

*Mark W. Nichols*, for appellee/third-party appellant Timothy Davis Fox.

*Bristow & Richardson, PLLC*, by: *Bill W. Bristow*, for third-party appellee Leslie Steen.

*Colin R. Jorgensen*, Ass't Att'y Gen., for amicus curiae Arkansas Attorney General Dustin McDaniel.