In October 2017, the State filed a Rule 2(f) petition requesting permission to appeal to this court and sought a discovery stay pending our review. We granted the Rule 2(f) petition and stayed the discovery.
II. Mootness
A case is moot when a decision would not have any practical legal effect upon a then existing legal controversy. Dillon v. Twin City Bank , 325 Ark. 309, 924 S.W.2d 802 (1996). Without question, our decision in this matter would have no effect on the now-resolved controversy as a result of our decision to reverse and dismiss in Protect Fayetteville v. City of Fayetteville , 2019 Ark. 30, 565 S.W.3d 477. This alone does not foreclose our consideration of the issues on appeal.
We have recognized two exceptions to the mootness doctrine: matters that are capable of repetition yet evading review and matters involving a substantial public interest that are likely to be litigated in the future. Ark. Gas Consumers, Inc. v. Ark. Public Serv. Comm'n , 354 Ark. 37, 118 S.W.3d 109 (2003). In limited cases we have applied one of the exceptions and addressed the issues raised despite completion of the controversy between the parties. See Nathaniel v. Forrest City Sch. Dist. No. 7 , 300 Ark. 513, 780 S.W.2d 539 (1989) ; Owens , 299 Ark. 373, 772 S.W.2d 596 ; Cummings v. Washington Cty. Election Comm'n , 291 Ark. 354, 724 S.W.2d 486 (1987) ; Robinson v. Ark. State Game & Fish Comm'n , 263 Ark. 462, 565 S.W.2d 433 (1978) ; Dotson v. Ritchie , 211 Ark. 789, 202 S.W.2d 603 (1947) ; Carroll v. Schneider , 211 Ark. 538, 201 S.W.2d 221 (1947).
We have explained that "where considerations of public interest or the prevention of future litigation are present, the choice remains ours as to whether we may elect to settle an issue, even though moot." Duhon v. Gravett , 302 Ark. 358, 360, 790 S.W.2d 155, 156 (1990) ; see also Ark. Gas Consumers, Inc. , 354 Ark. at 47-48, 118 S.W.3d at 115. Duhon concerned the constitutionality of the writ of execution statutes. Because this court foresaw future litigation and recognized the substantial public interest involved, it chose to resolve the constitutional issue, even though the judiciable controversy was moot. Id. This court has applied the substantial-public-interest exception to address moot issues from 1892 to as recently as 2003. See, e.g. , Ark. Gas Consumers, Inc. , 354 Ark. 37, 118 S.W.3d 109 ; Forrest Constr., Inc. v. Milam , 345 Ark. 1, 43 S.W.3d 140 (2001) ; Wilson v. Pulaski Ass'n of Classroom Teachers , 330 Ark. 298, 954 S.W.2d 221 (1997) ; Owens v. Taylor , 299 Ark. 373, 772 S.W.2d 596 (1989) ; Cain v. Carl-Lee , 171 Ark. 155, 283 S.W. 365 (1926) ; Wilson v. Thompson , 56 Ark. 110, 19 S.W. 321 (1892).
The issues of legislative and executive privilege raised here are of first impression in Arkansas. Guidance is needed for the public in pursuing litigation against the State, for the legislative and executive branches in conducting their business and responding to discovery requests, and for circuit courts when ruling on discovery disputes. This court is mindful that many issues involving privilege will not be resolved completely until a specific factual situation is before us. Nevertheless, the substantial public interest obliges us to decide the threshold issue of whether these privileges exist in Arkansas.
*109 III. Legislative Privilege
The legislative privilege is derived from the Speech and Debate Clause of the Arkansas Constitution. It states that "for any speech or debate in either house," members of the General Assembly "shall not be questioned in any other place." Ark. Const. art. 5, § 15.
Our primary goal in construing and interpreting a constitutional provision is to ascertain and give effect to the intent of Arkansans. Martin v. Kohls , 2014 Ark. 427, 444 S.W.3d 844. We give the language of the constitutional provision its plain and ordinary meaning. Kelly v. Martin ex rel. State , 2014 Ark. 217, 433 S.W.3d 896. In addition, when we engage in constitutional construction and interpretation, we look at the history of the provision. Bryant v. English , 311 Ark. 187, 193, 843 S.W.2d 308, 311 (1992) ; Gatzke v. Weiss , 375 Ark. 207, 211, 289 S.W.3d 455, 458 (2008). We have also compared prior versions of our constitution to interpret its meaning. See State v. Brown , 356 Ark. 460, 469, 156 S.W.3d 722, 728 (2004).
Although this court has not previously construed the Speech and Debate Clause, we do not need to look far to ascertain its objectives. The language in our clause is identical to the Speech and Debate Clause in the United States Constitution. Given the history of the provision, this appears to have been deliberate. The Speech and Debate Clause in our prior constitution of 1868 contained the following language: "And they [Senators and Representatives] shall not be questioned in any other place for remarks made in either House." Ark. Const. of 1868, art. 5, § 12. In the 1874 Constitution, which contains the current version of the clause, the people of Arkansas replaced the prior version with the exact language of the United States Constitution's Speech and Debate Clause.
Typically, when this court interprets constitutional provisions that are identical or virtually identical to the federal constitution, we adopt the interpretation of the United States Supreme Court. Compare Mullinax v. State , 327 Ark. 41, 938 S.W.2d 801 (1997) ; Stout v. State , 320 Ark. 552, 898 S.W.2d 457 (1995), with Brown , 356 Ark. 460, 156 S.W.3d 722. For this reason, we conclude, like the Supreme Court, that the Speech and Debate Clause affords legislators privilege from certain discovery and testimony and that the privilege extends beyond statements and acts made on the literal floor of the House. We therefore do not read the Speech and Debate Clause as narrowly as the circuit court did in this case and reverse his interpretation. However, we refuse to further set the parameters of the privilege without more facts before us. This is the more prudent course. The development will occur in future cases based on specific facts before us.
IV. Executive Privilege
Next, we address a second issue of first impression-whether executive privilege exists in Arkansas. We conclude that the Arkansas Constitution provides for the privilege.
Our state constitution provides a specific separation-of-powers provision:
§ 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another.
§ 2. No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances *110 hereinafter expressly directed or permitted.
Ark. Const., art. 4, §§ 1, 2. The separation-of-powers doctrine is "a basic principle upon which our government is founded and should not be violated or abridged." Fed. Express Corp. v. Skelton , 265 Ark. 187, 197-98, 578 S.W.2d 1, 7 (1979). Our separation-of-powers jurisprudence closely guards the balance of powers between branches, with each branch being delegated specified powers. "The legislative branch ... has the power and responsibility to proclaim the law through statutory enactments. The judicial branch has the power and responsibility to interpret the legislative enactments. The executive branch has the power and responsibility to enforce the laws as enacted and interpreted by the other two branches." Id.
The executive privilege was first and perhaps most notably exercised in United States v. Nixon , 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), when the United States Supreme Court recognized that the executive privilege was necessary to provide the chief executive with access to candid advice in order to explore policy alternatives and reach appropriate decisions. Other state courts have followed Nixon because "refusal to recognize the gubernatorial privilege would subvert the integrity of the governor's decision-making process, damaging the functionality of the executive branch and transgressing the boundaries set by our separation of powers doctrine." Freedom Found. v. Gregoire , 178 Wash. 2d 686, 310 P.3d 1252 (2013) ; see Republican Party of N.M. v. N.M. Taxation & Revenue Dep't , 283 P.3d 853 (N.M. 2012) ; State ex rel. Dann v. Taft , 109 Ohio St.3d 364, 848 N.E.2d 472 (2006) ; Guy v. Judicial Nominating Comm'n , 659 A.2d 777 (Del. Super. Ct. 1995) ; Hamilton v. Verdow , 287 Md. 544, 414 A.2d 914 (1980) ; Nero v. Hyland , 76 N.J. 213, 386 A.2d 846 (1978). Considering the separation-of-powers doctrine, we hold that the executive privilege also exists in Arkansas. Again, its application and limitations will bear out in future cases. We therefore reverse the circuit court's finding that executive privilege does not exist in Arkansas.
Reversed and dismissed.
Special Justices Hugh Finkelstein and Maureen Hazinski Harrod join in this opinion.
Baker and Wynne, JJ., concur.
Goodson and Hart, JJ., not participating.