Cite as 2023 Ark. 140

# SUPREME COURT OF ARKANSAS

**No.** CV-23-468

ARKANSAS DEPARTMENT OF
EDUCATION; JACOB OLIVA, IN HIS
OFFICIAL CAPACITY AS ARKANSAS
SECRETARY OF EDUCATION;
RANDY HENDERSON, JEFF WOOD,
ADRIENNE WOODS, STEVE
SUTTON, O. FITZGERALD HILL,
OUIDA NEWTON, SARAH MOORE,
KATHY MCFETRIDGE, AND LISA
HUNTER, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE
ARKANSAS STATE BOARD OF
EDUCATION; FRIENDSHIP
EDUCATION FOUNDATION; AND
MARVELL-ELAINE SCHOOL
DISTRICT

                            APPELLANTS

V.

DORIS IVY JACKSON; LAVERNE
SIMS; JESSELIA MAPLES;
DIAMACIOUS SIMS; DARRYL
HARRIS; SYLVIA MOORE;
DANIELLE WRIGHT; DERASHAUN
MCGHEE; VIVIAN DAVIS; JAMES
CARRUTH; IOLA HOSKINS;
STEVEN GRAPPE; VERONICA
MCCLANE; AND CITIZENS FOR
ARKANSAS PUBLIC EDUCATION
AND STUDENTS (CAPES), A BALLOT
QUESTION COMMITTEE

                              APPELLEES

**Opinion Delivered:** October 12, 2023

APPEAL FROM THE
PULASKI COUNTY CIRCUIT
COURT, FOURTH DIVISION
[NO. 60CV-23-3267]

HONORABLE HERBERT WRIGHT,
JUDGE

<u>REVERSED AND DISMISSED</u>.

**BARBARA W. WEBB, Justice**

Appellants Arkansas Department of Education, Jacob Oliva, in his official capacity as Arkansas Secretary of Education, Randy Henderson, Jeff Wood, Adrienne Woods, Steve Sutton, O. Fitzgerald Hill, Ouida Newton, Sarah Moore, Kathy McFetridge, and Lisa Hunter, in their official capacities as members of the Arkansas State Board of Education (collectively, "State appellants"), Friendship Education Foundation, and Marvell-Elaine School District, appeal the circuit court's declaratory judgment in favor of appellees Doris Ivy Jackson, Laverne Sims, Jesselia Maples, Diamacious Sims, Darryl Harris, Sylvia Moore, Danielle Wright, DeraShaun McGhee, Vivian Davis, James Carruth, Iola Hoskins, Steven Grappe, Veronica McClane, and Citizens for Arkansas Public Education and Students ("CAPES"), a ballot-question committee. At issue is the circuit court's finding that the emergency clause contained within Act 237 of 2023 (the "LEARNS Act") did not receive a separate roll-call vote as required by the Arkansas Constitution, rendering the clause procedurally invalid. For reversal, appellants argue (1) this case presents a nonjusticiable political question; (2) the LEARNS Act emergency clause received a separate roll-call vote; and (3) sovereign immunity bars appellees' complaint. We reverse the circuit court's ruling and dismiss the case below.

This case has been before this court in *Arkansas Department of Education v. Jackson*, 2023 Ark. 105, 669 S.W.3d 1 ("*Jackson I*"), wherein we provided a full recitation of the facts. The relevant facts are as follows. During the 2023 legislative session, the Arkansas General Assembly passed the LEARNS Act. The legislation was then sent to the Governor, who signed it into law on March 8, 2023. Because section 73 of the LEARNS Act contained

2

an emergency clause, certain provisions became effective on the date of the Governor's approval.

Appellees thereafter filed a complaint against appellants seeking a declaratory judgment that the LEARNS Act's emergency clause was invalid and ineffective under the Arkansas Constitution. They also requested a temporary restraining order ("TRO") or, alternatively, a motion for preliminary injunction. Appellees' claims were brought under the Administrative Procedure Act, Ark. Code Ann. §§ 25-15-201 et seq. (Repl. 2014 & Supp. 2021), the Uniform Declaratory Judgments Act, Ark. Code Ann. §§ 16-11-101 et seq. (Repl. 2016 & Supp. 2021), and article 16, section 13 of the Arkansas Constitution. Appellees alleged that the emergency clause was defective under article 5, section 1 of the Arkansas Constitution on three separate grounds. First, the General Assembly failed to pass the emergency clause by a separate roll-call vote. Second, the emergency clause fails to state facts sufficient to establish an emergency. Third, the emergency clause attempts to declare an emergency as to certain provisions of the Act, rather than the Act as a whole.

On May 26, 2023, the circuit court entered an order granting appellees' motion for TRO pending a full hearing scheduled for June 20, 2023. The circuit court concluded that appellees would suffer irreparable harm absent injunctive relief and had demonstrated a likelihood of success on the merits of their claims. Appellants then brought an interlocutory appeal pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(6). In *Jackson I*, we reversed the circuit court's order, vacated the TRO, and remanded. We concluded that appellees had failed to demonstrate irreparable harm as their claims could be either

3

compensated by money damages or redressed in a court of law and were speculative in nature. *Id.* at 8–9, 669 S.W.3d at 12–13.

On remand, the circuit court held a full hearing on the merits of appellees' claims. The circuit court heard witness testimony on the General Assembly's voting procedures for bills with emergency clauses as well as testimony on the LEARNS Act adoption itself. Those witnesses included State Senator Clarke Tucker, State Representative Tiffany McCullough, former Senate Parliamentarian Steve Cook, and then-current House Parliamentarian Finos B. Johnson. State appellants also submitted witness affidavits and journals of the Arkansas House of Representatives and Arkansas Senate, which reflected that the LEARNS Act and its emergency clause were passed by separate roll call. Over State appellants' objections, appellees introduced video recordings of each chamber voting on the LEARNS Act and its emergency clause simultaneously.

Following the hearing, the circuit court entered an order on June 30, 2023, declaring the LEARNS Act emergency clause invalid because it did not receive a separate roll-call vote. The circuit court concluded that it was not required to treat the legislative journals as dispositive of two separate votes having occurred and instead could "look beyond the text of the journals of the legislature to determine whether an act has been duly passed." The circuit court in turn observed that "the video of the proceedings . . . clearly show[s] that only one vote was taken" and that "testimony from sitting [legislators] . . . corroborated the video and testified that it accurately reflected the proceedings in each chamber, regardless of what was recorded in the journals." Accordingly, the circuit court held that the LEARNS Act and its emergency clause were not voted on by separate roll call in either chamber as

4

required under the Arkansas Constitution and, as a result, all provisions of the Act purported to be effective immediately were now effective on the default date for legislation of this session, August 1, 2023. Having found the emergency clause was not properly enacted, the circuit court declined to reach appellees' remaining arguments regarding the sufficiency of the emergency or the Act's varying effective dates. This appeal followed.

As a threshold matter, we must first address appellees' contention that this court lacks jurisdiction over this appeal because the circuit court's order is not final. They claim that the order is not final because the circuit court did not resolve their remaining arguments for finding the emergency clause unconstitutional. Arkansas Rule of Appellate Procedure–Civil (2)(a)(1) provides that an appeal may only be taken from a final judgment or decree entered by the circuit court. For an order to be final and appealable, "it must . . . conclude [the parties'] rights to the subject matter in controversy." *Convent Corp. v. City of North Little Rock*, 2016 Ark. 212, at 5, 492 S.W.3d 498, 502. In contrast, an order that contemplates further action by a party or the court is not a final, appealable order. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d 901, 905.

Appellees brought an action for declaratory judgment, seeking an order invalidating the LEARNS Act emergency clause. The circuit court recognized that although appellees advanced distinct legal theories in their complaint, "the deciding factor" for each would be the emergency clause's validity. The circuit court then declared the emergency clause invalid because it was passed without a separate roll-call vote. As such, the circuit court pointed out that it was unnecessary to rule on appellees' remaining arguments. The circuit court's order

5

concluded the controversy by granting appellees declaratory relief, and it contemplated no further action. This appeal is now properly before this court.

Appellees also assert that this case should be dismissed as moot now that the default date of August 1, 2023, has passed and the LEARNS Act is effective regardless of the emergency clause. A case is moot when any judgment rendered would not have any practical legal effect upon a then-existing legal controversy. *Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2019 Ark. 100, at 2, 571 S.W.3d 1, 2. We agree with appellees that, given the timing of this appeal, our decision would have no effect on the underlying controversy of this case—the effective date of the LEARNS Act.

Nevertheless, we may still review the issues on appeal if a recognized exception to the mootness doctrine applies. One such exception is for matters involving a substantial public interest that are likely to be litigated in the future. *Gray v. Thomas-Barnes*, 2015 Ark. 426, at 5, 474 S.W.3d 876, 879. We have held that when "[g]uidance is needed for the public in pursuing litigation against the State" and "for the legislative and executive branches in conducting their business," the substantial-public-interest exception obliges our court to address the issues raised in an otherwise moot case. *Protect Fayetteville v. City of Fayetteville*, 2019 Ark. 28, at 4–5, 566 S.W.3d 105, 108. The present matter falls squarely within this exception because it calls into question the decades-long process of both the House and the Senate for voting on emergency clauses. To be sure, if the circuit court's order stands, countless State actions made in reliance on effective emergency clauses will be cast in doubt and potentially be subjected to collateral attacks. The substantial interest of both the public

6

and our coordinate branches of government necessitates that we resolve the issues raised in this appeal.

On appeal, the State argues this case presents a nonjusticiable political question that our courts may not decide. Alternatively, it argues that the LEARNS Act emergency clause received a separate roll-call vote as required under the Arkansas Constitution and, as a result, appellees' claims are barred by the doctrine of sovereign immunity.[1] Sovereign immunity is jurisdictional immunity from suit, and jurisdiction must be determined entirely from the pleadings. *Ark. Oil & Gas Comm'n v. Hurd*, 2018 Ark. 397, at 9, 564 S.W.3d 248, 253. The pleadings in this case sufficiently raised factual allegations of illegal and unconstitutional State action, and the suit sought only declaratory and injunctive relief. Consequently, this matter is not barred by sovereign immunity. *See Osage Creek Cultivation, LLC v. Ark. Dep't of Fin. & Admin.*, 2023 Ark. 47, at 6, 660 S.W.3d 843, 847 (noting that lawsuits seeking declaratory or injunctive relief against the State for ultra vires, unconstitutional, or illegal acts can surmount sovereign immunity).

At issue is whether the General Assembly complied with article 5, section 1 of the Arkansas Constitution when it enacted the LEARNS Act emergency clause. In considering this question, we look to our constitutional text. It is our responsibility to decide what a provision of the Arkansas Constitution means, and we have said that provisions that are plain and unambiguous will be given their obvious and common meaning. *See, e.g., Zook v. Martin*, 2018 Ark. 293, at 4, 557 S.W.3d 880, 883. Neither rules of construction nor rules

---

[1]Separate appellants Friendship Education Foundation and Marvell-Elaine School District adopt State appellants' arguments on appeal.

of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.*

To enact an emergency clause, the constitution requires "two-thirds of all members elected to each house . . . shall vote upon separate roll call in favor of the measure going into immediate operation." Ark. Const. art. 5, § 1. However, the roll-call vote does not become law until "the names of the persons voting for and against the same be entered on the journal; and a majority of each house be recorded thereon as voting in its favor." Ark. Const. art. 5, § 22. And in a separate provision, the constitution mandates that "[e]ach house shall keep a journal of its proceedings." Ark. Const. art. 5, § 12. In consideration of these constitutional commands, this court recognized over a century ago that the "journal entry [is] the sole evidence of [legislative] proceedings." *Niven v. Road Improv. Dist.*, 132 Ark. 240, 242, 200 S.W. 997, 997 (1918). Today, we reaffirm this precedent and conclude that the plain language of the constitution designates the journal of each chamber as the official record of the General Assembly's votes.

In this instance, the legislative journals reflect that the LEARNS Act and its emergency clause were adopted by separate votes. The House Journal indicates a separate roll call and vote for the emergency clause. Likewise, the Senate Journal indicates a separate roll call and vote for the emergency clause. Thus, according to the official record, the emergency clause was passed in compliance with article 5, section 1 of the Arkansas Constitution.

In reaching the opposite conclusion, the circuit court ignored the face of the record and instead relied on parol evidence—video recordings of House and Senate proceedings–

–to find that the General Assembly's process for adopting emergency clauses is constitutionally infirm. As explained, the journals are the official record, and it was erroneous for the circuit court to look to parol evidence in reaching its decision. Because the plain text of our constitution supports the General Assembly's adoption of the LEARNS Act, we need not consider the validity of internal legislative procedures or whether such review presents a political question. We therefore reverse the circuit court's order and dismiss the case.

Reversed and dismissed.

BAKER, WOOD, and WOMACK, JJ., and Special Justice CORY COX concur.

KEMP, C.J., dissents.

HILAND, J., not participating.

---

**KAREN R. BAKER, Justice, concurring.** While I concur in the majority's decision to reverse and dismiss, I write separately for the reasons stated in my concurrence in *Arkansas Department of Education v. Jackson*, 2023 Ark. 105, at 9, 669 S.W.3d 1, 8 ("*Jackson I*") (Baker, J., concurring). The lead opinion's limited sovereign-immunity analysis conflicts with the broad language of *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, and until *Andrews* is overruled, suit against the State is barred. In the present case, the lead opinion states,

> The pleadings in this case sufficiently raised factual allegations of illegal and unconstitutional State action, and the suit sought only declaratory and injunctive relief. Consequently, this matter is not barred by sovereign immunity. *See Osage Creek Cultivation, LLC v. Ark. Dep't of Fin. & Admin.*, 2023 Ark. 47, at 6, 660 S.W.3d 843, 847 (noting that lawsuits seeking

9

declaratory or injunctive relief against the State for ultra vires, unconstitutional, or illegal acts can surmount sovereign immunity).

However, as I explained in my dissent in *Arkansas Oil & Gas Commission v. Hurd*, 2018 Ark. 397, at 18–19, 564 S.W.3d 248, 258–59,

> In *Andrews*, the court held that "never means never," therefore . . . suit is barred based on the broad language in *Andrews* . . . because *Andrews* did not identify exceptions, exemptions or the like. Again, the State may never be sued[.]

This appeal stems from the circuit court's order declaring the emergency clause contained within the LEARNS Act invalid because the General Assembly failed to pass the emergency clause by a separate roll-call vote in either chamber as required under the Arkansas Constitution. A review of the General Assembly's voting procedures constitutes a review of State action, and as I stated in my concurrence in *Jackson I*, any claims that seek to control the actions of the State are barred pursuant to *Andrews*. *Jackson I*, 2023 Ark. 105, at 10, 669 S.W.3d at 8.

For the reasons stated in my discussion above, I concur with the result reached by the majority to reverse and dismiss.

---

**RHONDA K. WOOD, Justice, concurring.** I agree that we should reverse and dismiss, but my analysis differs from the lead opinion. The lawsuit below challenged how the General Assembly voted, not where it kept its records. Because assessing how the General Assembly conducted its proceedings would violate separation of powers, I would decline to answer this political question.

The circuit court explained that the appellees sued, challenging "the constitutionality of the Act's enaction" because they contended the emergency clause was invalid because there was not a separate roll-call vote. The circuit court agreed and ruled that "the Emergency Clause of the LEARNS Act was not enacted pursuant to the requirements of that Constitution." Thus, the issue is not whether the official records of the General Assembly's proceedings are journals or videos. Rather, the issue is how the General Assembly procedurally operates and conducts its voting. The journal and videos are evidence used to determine the issue of whether the vote was proper.

We cannot resolve a legislative procedure-and-process issue without exceeding our judicial role by answering a political question. The Arkansas Constitution gives each house authority to determine its own rules and procedures.[1] Answering a political question about how the legislature conducts its proceedings would violate separation of powers. We cannot usurp the legislative branch's core functions or threaten its independent institutional integrity.[2] The only way to decide this issue would be to pass judgment on the legislative branch's internal procedural method of voting. This is not our role.

Like the eight other state courts that have considered challenges based on the legality of internal legislative processes, we should conclude that this issue presents a nonjusticiable political question.[3] I would end our review here. The circuit court did not rule on the

---

[1] Ark. Const. art. 5, § 12.

[2] Ark. Const. art. 4; *see also Baker v. Carr*, 369 U.S. 186 (1962); *Ark. State Bd. of Elec. Comm'rs v. Pulaski Cty. Elec. Comm'n*, 2014 Ark. 236, 437 S.W.3d 80.

[3] *See, e.g., Sumner v. New Hampshire Sec'y of State*, 136 A.3d 101, 106 (N.H. 2016); *Brown v. Owen*, 165 Wash. 2d 706, 722 (2009); *Jefferson Cty. Comm'n v. Edwards*, 32 So. 3d

remainder of the emergency-clause claims. Our analysis should begin and end with the political-question doctrine. Nor should we address any illegal-exaction claim because the appellees did not cross-appeal from the denial of their illegal-exaction claim.

Special Justice CORY ALLEN COX joins.

SHAWN A. WOMACK, Justice, concurring. I agree with the majority's disposition to reverse and dismiss. While for reasons I have stated previously in this case, I agree with its conclusion as to the validity of the adoption of the emergency clause and the recognition of the journal as the official record, I would not have reached the merits.[1] I write separately, because dismissal of the case is proper pursuant to article 5, section 20 of the Arkansas Constitution.[2]

Without an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts.[3] There are few clearer commands in our constitution than article 5, section 20. For these reasons, I would reverse and dismiss the

---

572, 584 (Ala. 2009); *Smigiel v. Franchot*, 978 A.2d 687, 701 (Md. 2009); *Brady v. Dean*, 790 A.2d 428, 433 (Vt. 2001); *Mayhew v. Wilder*, 46 S.W.3d 760, 773 (Tenn. Ct. App. 2001); *Philpot v. Haviland*, 880 S.W.2d 550, 552 (Ky. 1994); *Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977).

[1] *See Ark. Dep't of Educ. v. Jackson*, 2023 Ark. 105, at 20–21, 669 S.W.3d at 14 (Womack, J., concurring, in which Webb, J., joins).

[2] *See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[3] *Id.*

case and base the disposition solely on article 5, section 20 of the Arkansas Constitution. I respectfully concur.

JOHN DAN KEMP, Chief Justice, dissenting. The Arkansas LEARNS Act—Act 237 of 2023—became operative law on August 1, 2023. Because that date has passed and the LEARNS Act has since been implemented, the present appeal is now moot. For this reason, I respectfully dissent.

As a general rule, this court will not review issues that are moot. *Terry v. White*, 374 Ark. 387, 391, 288 S.W.3d 199, 202 (2008). A case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.*, 288 S.W.3d at 202. In other words, a moot case presents no justiciable issue for determination by the court. *Id.*, 288 S.W.3d at 202. We also do not issue advisory opinions in anticipation of future litigation. *Walker v. McCuen*, 318 Ark. 508, 516, 886 S.W.2d 577, 582 (1994). Courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *Flow Doc, Inc. v. Horton*, 2009 Ark. 411, at 6, 334 S.W.3d 865, 870.

We have, however, recognized two exceptions to the mootness doctrine. *Lott v. Langley*, 2013 Ark. 247, at 2. The first exception involves issues that are capable of repetition, yet evading review, and the second exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id*.

I am convinced that the issues presented in this case are moot, that the lead opinion issued on the merits is wholly advisory, and that this case does not fall within one of our recognized exceptions. After this court reversed and remanded in *Arkansas Department of*

*Education v. Jackson*, 2023 Ark. 105, 669 S.W.3d 1, the circuit court entered an order, dated June 30, 2023, ruling,

> The Court finds that the Emergency Clause of the LEARNS Act was not enacted pursuant to the requirements of the Constitution. Since that provision of the law is not effective, all provisions of the Act purported to be immediately effective due to the invalid clause are now effective as of the default date the Act would be effective—August 1, 2023.

Throughout this litigation, both the parties and the circuit court have limited this case to the time frame before August 1, 2023. Because that date has passed and the LEARNS Act has remained in effect since August 1, this court now renders an advisory opinion on the Act's emergency clause. In my view, the public-interest exception does not apply because any future litigation on emergency clauses is speculative. Therefore, I would dismiss the appeal as moot.

*Tim Griffin*, Att'y Gen., by: *Nicholas J. Bronni*, Solicitor Gen.; *Dylan L. Jacobs*, Dep. Solicitor Gen.; and *Michael A. Cantrell*, Ass't Solicitor Gen., for State appellants.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Devin R. Bates*, for appellant Friendship Education Foundation.

*Bequette, Billingsley & Kees, P.A.*, by: *W. Cody Kees* and *Phillip M. Brick, Jr.*, for appellant Marvell–Elaine School District.

*Nolan Law Firm, PA*, by: *Ali Noland*, for appellees.